**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID L. MARTIN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. |
| v. | **CLASS ACTION COMPLAINT** |
| PHILIPS NORTH AMERICA LLC, KONINKLIJKE PHILIPS N.V., and PHILIPS RS NORTH AMERICA LLC, f/k/a RESPIRONICS, INC., | **JURY TRIAL DEMAND** |
| Defendants, | |

Plaintiff David L. Martin ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint (the "Action") against Philips North America LLC, Koninklijke Philips N.V. ("Royal Philips"), and Philips RS North America LLC, f/k/a Respironics, Inc. (collectively, "Defendants" or "Philips"), and alleges the following based upon personal knowledge with respect to himself and his personal circumstances and actions, and upon information, belief, and attorney investigation with respect to all else.

**NATURE OF THE ACTION**

1.    In 2016, Plaintiff purchased a DreamStation Auto CPAP machine (the "CPAP Machine"), as prescribed by his physician, Dr. Mohammad A. Zubair, MD, FCCP of Woodbridge, New Jersey. The CPAP Machine was developed, manufactured, and distributed by Defendants. Plaintiff was prescribed the use of CPAP therapy for treatment of his serious sleeping disorder, Sleep Apnea. While using the Machine, Plaintiff experienced trouble breathing. He

1

consequentially underwent another medical examination and was prescribed and purchased Fluticasone Propionate 50mg.

2.      On or about June 14, 2021, Defendant Royal Philips issued a recall notification (the "Recall") of specific Philips Bi-Level Positive Airway Pressure (Bi-Level PAP), Continuous Positive Airway Pressure (CPAP), and mechanical ventilator devices (collectively, the "Recalled Devices") "to mitigate potential health risks related to the sound abatement foam component in such devices."[1]

3.      The announcement stated that the Recall was due to a product defect which caused harmful chemicals from the machines' internal "sound abatement foam" to enter the machines' airways and be inhaled by the users (the "Defect"). Among the health risks of these dangerous chemicals are cancer, heart problems, and Type 2 Diabetes. The CPAP Machine purchased and used by Plaintiff was among those recalled.

4.      On or about June 22, 2021, Plaintiff saw a news story regarding the Recall, and placed a phone call to Ocean Health Care, where he had purchased his CPAP Machine. Ocean Health Care informed him that his machine was included in the Recall and directed him to stop using the machine. Plaintiff then called Defendants, who confirmed the information, and said they would call him at a later time with more information. Plaintiff has not received that subsequent phone call.

5.      On or about July 22, 2021, the FDA issued a notice identifying the Recall as a Class 1 recall, the most serious type of recall, saying that the use of the Recalled Devices may cause

---

[1] https://www.bloomberglaw.com/ms/product/blaw/document/QUODVZ6QRTHC (last accessed July 28, 2021)

serious injury or death. The notice further states that there have been over 1,200 complaints and over 100 injuries reported due to the Defect.

6.    Defendants have long known or had reason to know that polyester-based polyurethane foam, such as that used in the machines, had a natural tendency to emit these harmful chemicals, and yet chose to withhold that information from the millions of customers who use and rely on their PAP and CPAP machines to treat their sleep disorders.

7.    Defendants failed to issue any kind of public warning regarding the dangers of their machines until late April 2021. In their Form 6-K filed with the Securities Exchange Commission (the "SEC") on April 26, 2021, containing Royal Philip's first quarter 2021 results, Defendants informed shareholders of the Defect in the Recalled Devices. However, they did not issue the Recall until nearly two months later.

8.    Plaintiff therefore brings this action for defective design, failure to warn, negligent defective design, negligent failure to warn, negligent recall, gross negligence, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of the Magnuson-Moss Warranty Act, and violation of the New Jersey Consumer Fraud Act, seeking damages for all harms caused by Defendants' transgressions.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $5,000,000, and because Plaintiff and some members of the Class are citizens of states different from Defendants. The Court has personal jurisdiction over the Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and relate to Defendants' contacts with this District. Moreover, Defendant Philips RS has its principal place of business in

the Commonwealth. Defendants Philips RS and Philips NA are controlled by their parent Royal Philips. Defendants' affiliations with this District are so continuous and systematic as to render them essentially at home in the Commonwealth.

10.     Defendants have transacted business, maintained substantial contacts, purposefully targeted consumers and medical professionals for sales of its devices, and committed overt acts in furtherance of the unlawful acts alleged in this complaint in this District, as well as throughout the United States. Defendants' wrongful acts have been directed at, targeted, and have had the effect of causing injury to persons residing in, located in, or doing business in this District, as well as throughout the United States. Additionally, Defendants receive substantial revenue and profits from sales of CPAP Machines in this District.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants Philips NA has its headquarters in this District, transacts business in this District and a substantial part of the events or omissions giving rise to the claims alleged occurred in this District.

## PARTIES

12.     Plaintiff David L. Martin is a resident of New Jersey who was diagnosed with Sleep Apnea and purchased a DreamStation Auto CPAP machine in accordance with his physician's prescription to treat his Sleep Apnea, and was consequentially harmed.

13.     Defendant Philips North America LLC ("Philips NA") is a Delaware corporation with its principal place of business at 222 Jacobs Street, Cambridge, MA, 02141, and is a subsidiary of Defendant Koninklijke Philips N.V. that oversees the group's operations in the US, Canada, and Mexico. Its divisions include Philips Healthcare (imaging, patient information

systems, home healthcare products, clinical management and equipment financing) and Consumer Lifestyle (consumer electronics, home appliances, personal care).

14.    Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation headquartered in Amsterdam, The Netherlands, and is the parent company of Defendants Philips North America LLC and Philips RS North America LLC.  Royal Philips is, among other things, a health technology company that claims to be focused on improving people's health across the health continuum, from healthy living and prevention to diagnosis, treatment, and home care. The company offers products and services in diagnostic imaging, image-guided therapy, patient monitoring and health informatics, as well as in consumer health and home care.

15.    Defendant Philips RS North America LLC, formerly Respironics, Inc., ("Philips RS") is a Delaware corporation with its principal place of business at 1001 Murry Ridge Lane, Murrysville, PA, 15668, and is a subsidiary of Defendant Koninklijke Philips N.V. that manufactures and markets medical devices. Philips RS offers therapy products for obstructive sleep apnea and portable ventilation, as well as monitoring devices for newborns, sleep diagnostics, and products for the treatment of respiratory disorders. Philips RS serves customers globally.

## SUBSTANTIVE ALLEGATIONS

16.    One of Philips' lines of business is the developing, manufacturing, distributing, supporting, and servicing of devices for treatment of sleep and respiratory disorders, including Sleep Apnea. The DreamStation Auto CPAP machine is among the devices that Defendants developed, manufactured, and distributed.

17.    Sleep Apnea is a serious disorder that affects millions of Americans, characterized by a tendency for breathing to become partially obstructed during sleep. It is frequently associated

with interrupted sleep, snoring, and daytime fatigue, among other symptoms. More serious cases can cause heart attacks, strokes, hypertension, and other major medical ailments. The use of CPAP machines such as the DreamStation Auto CPAP machine is among the most common prescriptions for treatment of this disorder.

18.    CPAP machines treat Sleep Apnea by generating a stream of pressurized air through a mask placed over the user's nose and mouth. The stream increases the air pressure in the user's throat and substantially reduces the risk of obstruction.

19.    Within Defendants' machines, Defendants placed a "sound abatement foam" made of polyester-based polyurethane ("PE-PUR"). PE-PUR is highly reactive to several stimuli, including heat, oxygen, sunlight, moisture, microbial attack, and others. Such stimuli cause PE-PUR to degrade and emit volatile organic compounds that are toxic and potentially carcinogenic. Because Defendants' machines operate at high temperatures and are frequently exposed to these other stimuli, the PE-PUR foam within was regularly exposed to these stimuli, and the harmful compounds were emitted into the pressurized air stream.

20.    The abundance of such stimuli in PAP and CPAP machines made PE-PUR foam a particularly hazardous and unsuitable choice of material for use in the machines.

21.    The characteristics of PE-PUR foam and their propensity for degradation, as well as the health hazards of exposure to the resulting chemicals, were known within the industry and were common knowledge to polymer experts prior to the production and sale of the Recalled Devices. Defendants knew or had reason to know of these characteristics and dangers prior to such production and sale.

22.    The Recalled Devices produced and sold by the Defendants, in addition to the DreamStation Auto CPAP, include: the E30; the DreamStation ASV; the DreamStation ST and

AVAPS; the SystemOne ASV4; the C Series; the OmniLab Advanced Plus; the SystemOne Q

Series; the DreamStation CPAP and BiPAP; the DreamStation Go CPAP and APAP; the Dorma

400 and 500 CPAP; the REMStar SE Auto CPAP; the Trilogy 100 and 200 ventilators; the Garbin

Plus, Aeris, and Lifevent ventilators; and the A-Series BiPAP V30 Auto, A30, and A40 ventilators.

23.     On their website, Philips advertises itself as a trusted brand and global leader in

sleep and respiratory therapy. Their branding promises that users of their products will "breathe

easier" and "sleep more naturally." Their branding further assures consumers that their "quality

systems reflect [their] commitment to providing exceptional therapy." Their machines are

advertised as "clinically proven" treatment for sleep disorders.

24.     Philips produced and distributed the Recalled Devices under this false and

deceptive marketing for years prior to their admission of the health dangers and the ensuing recall.

25.     In their Form 6-K or Q1 2021 quarterly report to shareholders, dated April 26, 2021,

Defendant Royal Philips admitted that:

> "Philips has determined from user reports and testing that there are
> possible risks to users related to the sound abatement foam used in
> certain of Philips' sleep and respiratory devices currently in use. The
> risks include that the foam may degrade under certain
> circumstances, influenced by factors including use of unapproved
> cleaning methods, such as ozone, and certain environmental
> conditions involving high humidity and temperature… Philips is in
> the process of engaging with the relevant regulatory agencies
> regarding this matter and initiating appropriate actions to mitigate
> these possible risks."

26.     Despite this public acknowledgement in April 2021, Defendants did not initiate the

Recall until June 14, 2021, or nearly two months later. And even then, the Recall was so poorly

executed that some consumers, such as Plaintiff, did not find out about it until over a week later,

nor did they find out from Defendants themselves, but rather from news reporting.

27.     Despite the seriousness of the problem, as identified by the FDA in labeling the Recall a Class 1 recall, on July 27, 2021, over a month into the Recall, Defendants are reported in an article entitled "Philips Says Updates are Imminent" to have suggested it would take approximately one year "throughout" to produce the approximately 3.5 to 4 million units needed to execute the Recall, and that Philips is limited in how much it can increase production by supply constraints. Defendants further noted that there had been no response yet by the FDA on Philips's "806" application for corrections and removal. Further, in a stroke of egregiously tone-deaf marketing, they have advertised that their next-generation CPAP machines, the DreamStation 2, are not affected by the issue.

28.     The delayed and half-hearted execution of the Recall, especially following the horrifically-long amount of time it took for Defendants to acknowledge the health risks of their products, serves to exemplify the shocking disregard that Defendants have for the health of their consumers. This is particularly horrifying from a company that produces and distributes products meant to treat serious health disorders.

29.     Plaintiff and the Class members have all suffered harms as a result of Defendants' actions.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action individually and on behalf of a Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3). Specifically, the Class consists of all persons in the United States who have purchased and/or used the Recalled Devices.

31.     Plaintiff also brings this action individually and as a representative of all those in the subclass of persons in New Jersey who have purchased and/or used the Recalled Devices.

32.    Excluded from the Class are Defendants, any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers and their immediate family members and Court staff assigned to this case.

33.    Plaintiff reserves the right to redefine the Class as appropriate prior to class certification.

34.    Class certification is appropriate because the rights of each member of the Class were violated in a similar fashion based upon Defendants' uniform actions, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35.    Pursuant to Fed. R. Civ. P. 23, this action has been brought and may be properly maintained as a class action for the following reasons:

a.    <u>Numerosity</u>: The members of the Class are so numerous that their individual joinder is impracticable. The Recall includes, by Defendants' own admission, millions of machines, and thus impacts millions of consumers. The exact number and identities of individual members of the Class are unknown to Plaintiff at this time, such information being in the sole possession of Defendants, but are readily ascertainable and can be identified through the discovery process.

b.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class since his recalled machine contains the same defect as the Recalled Devices of all others in the Class.

c.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all Class members and predominate over any questions pertaining only to individual Class members. The common legal and factual questions include, without limitation:

i.      Whether Defendants engaged in the conduct alleged herein;

ii.     Whether Defendants knew or had reason to know of the propensity for PE-PUR foam to degrade and emit harmful chemicals;

iii.    Whether Defendants knew or had reason to know of the health hazards resulting from the degradation of PE-PUR foam and emission of these harmful chemicals;

iv.     Whether Defendants are strictly liable for the defective design of their products;

v.      Whether Defendants were negligent in the defective design of their products;

vi.     Whether Defendants deliberately failed to disclose these health hazards to consumers and the public prior to the April admission;

vii.    Whether Defendants are strictly liable for failing to warn consumers of the dangerous nature of their products;

viii.   Whether Defendants were negligent in failing to warn consumers of the dangerous nature of their products;

ix.     Whether Defendants falsely advertised their products as safe;

x.      Whether Defendants' conduct, as described herein, was likely to mislead a reasonable consumer;

xi.     Whether Defendants' false statements, concealments, and omissions regarding their products were material to a reasonable consumer;

xii.    Whether the Defect was sufficiently complex or obscured such that an ordinary consumer could not have independently discovered it;

xiii.      Whether the Recalled Devices were unfit for the ordinary purposes for which they were used;

xiv.      Whether Defendants breached express warranties;

xv.      Whether Defendants breached implied warranties of merchantability;

xvi.      Whether Defendants have been unjustly enriched through the production, false marketing, and distribution of defective products;

xvii.      Whether Defendants were negligent in the execution of the Recall;

xviii.      Whether Defendants were grossly negligent in the conduct alleged herein;

xix.      Whether Plaintiff and the Class members were harmed by the Defendants' conduct alleged herein;

xx.      Whether Plaintiff and the Class members are entitled to damages as a result of such harm;

xxi.      The appropriate measure of damages for such harm;

xxii.      Whether Plaintiff and the Class members are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be deemed proper; and

xxiii.      The appropriate measure or nature of such equitable relief.

d.      <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high

and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

        e.      <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experience in complex class action litigation, and he intends to prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiff and his counsel.

36.    Plaintiff knows of no difficulty to be encountered in the maintenance of this Action that would preclude its maintenance as a class action.

37.    Defendants have acted on grounds that apply generally to the Class as a whole, such that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS

38.    As Defendants deliberately failed to disclose the dangerous defect in their products for an unknown period of time, any and all potentially relevant statutes of limitations that have run have been equitably tolled. Defendants deliberately concealed, misrepresented, and omitted material information that Plaintiff and Class members could not have reasonably known nor learned through reasonable diligence.

## CAUSES OF ACTION

## COUNT I

## <u>STRICT LIABILITY DESIGN DEFECT</u>

39.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

40.     The design of Defendants' Recalled Devices, including but not limited to the design and use of PE-PUR foam in the machines, was unreasonably defective and dangerous, and caused Plaintiff and Class members to potentially be exposed to toxic and carcinogenic chemical compounds.

41.     The design of the Recalled Devices and the use of the PE-PUR foam rendered the machines not reasonably fit, suitable, or safe for their intended purpose.

42.     The dangers of the PE-PUR foam outweighed the benefits of the Recalled Devices and rendered them unreasonably dangerous.

43.     Safe, alternative designs for such machines exist, as exemplified by the existence of other PAP machines and ventilators that do not have a similar unreasonable risk of harm, and these safer designs were viable and available to Defendants.

44.     As the Recalled Devices were unreasonably unsafe, they should not have been sold on the market.

45.     The Recalled Devices did not perform in a safe manner as an ordinary consumer of the product would expect.

46.     As a result of the dangerous design defect in the Recalled Devices, Plaintiff and Class members suffered damages of an amount to be determined at trial.

## COUNT II

## <u>NEGLIGENT DESIGN DEFECT</u>

47.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

48.     Defendants owe a duty to their consumers, including Plaintiff and Class members, to design their products in a reasonable manner. The design of the Recalled Devices, including but not limited to the design and use of the PE-PUR foam in the machines, was unreasonably defective and dangerous, and caused Plaintiff and Class members to potentially be exposed to toxic and carcinogenic chemical compounds.

49.     The design of the Recalled Devices and the use of the PE-PUR foam rendered the machines not reasonably fit, suitable, or safe for their intended purpose. The dangers of the PE-PUR foam outweighed the benefits of the Recalled Devices and rendered them unreasonably dangerous.

50.     Safe, alternative designs for such machines exist, as exemplified by the existence of other PAP machines and ventilators that do not have a similar unreasonable risk of harm, and these safer designs were viable and available to Defendants.

51.     As the Recalled Devices were unreasonably unsafe, they should not have been sold on the market.

52.     The Recalled Devices did not perform in a safe manner as an ordinary consumer of the product would expect.

53.     Defendants' dereliction of duty in the negligent, defective design of the Recalled Devices was the proximate cause of damages to Plaintiff and Class members.

## COUNT III

## <u>STRICT LIABILITY FAILURE TO WARN</u>

54.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55.     Defendants had a duty to warn Plaintiff and Class members of the defective and dangerous nature of the Recalled Devices. Defendants were in a superior position to know of the Defect, and yet deliberately failed to disclose it.

56.     As knowledge of the hazardous nature of PE-PUR foam was common in the industry prior to the design and manufacture of the Recalled Devices, Defendants knew or had reason to know of the dangerous defect in their products, and actively chose to conceal this knowledge from the public.

57.     Plaintiff and Class members would not have purchased and/or used the Recalled Devices had they known of their defective and dangerous nature.

58.     As a result of Defendants' failure to warn of the defective and dangerous nature of the Recalled Devices, Plaintiff and Class members suffered damages of an amount to be determined at trial.

## COUNT IV

## <u>NEGLIGENT FAILURE TO WARN</u>

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.     Defendants owed Plaintiff and Class members a duty of care to warn them of the defective and dangerous nature of the Recalled Devices. Defendants knew or had reason to know of the Defect but deliberately concealed it.

61.     Defendants' breach of duty caused Plaintiff and Class members to suffer damages of an amount to be determined at trial.

## COUNT V

## NEGLIGENT RECALL

62.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63.     Upon issuing a voluntary recall, Defendants assumed a duty to Plaintiff and Class members to exercise reasonable care in issuing and implementing the Recall.

64.     Defendants had the ability to make Plaintiff and Class members aware of the Recall by sending them physical notice, and/or by sending physical notice to their prescribing physicians who could in turn have warned them. Instead, Defendants chose only to give notice of the Recall online, where few would see it. As a result, Plaintiff and Class members continued to use the defective and dangerous Recalled Devices until they learned of the Recall by alternative means.

65.     Furthermore, as has become plainly clear, Defendants did not have an appropriate plan for fixing and/or replacing the defective products in a timely manner, forcing Plaintiff and Class members to pursue alternative treatments at their own cost.

66.     Defendants breached their duty to properly recall by failing to inform consumers of the Recalled Devices and failing to fix and/or replace them in a timely manner. As a result of this breach of duty, Plaintiff and Class members have suffered damages of an amount to be determined at trial.

**COUNT VI**

**GROSS NEGLIGENCE**

67.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.     As outlined above, Defendants breached various duties of care owed to Plaintiff and Class members. Their willful and wanton dereliction of their duties and their reckless and unconscionable disregard for the health and safety of their consumers constitute an extreme departure from the ordinary standard of conduct. As a result of this gross negligence, Plaintiff and Class members have suffered damages of an amount to be determined at trial.

**COUNT VII**

**BREACH OF EXPRESS WARRANTY**

69.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.     Defendants expressly warranted that the Recalled Devices "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications for a period of two (2) years from the date of sale."

71.      As Defendants knew or had reason to know of the defective and dangerous nature of the Recalled Devices well before the end of the warranty periods of any of Class members' purchases, and deliberately failed to disclose it, Defendants are estopped from asserting that warranty claims are barred based on the expiration of the warranty period. Plaintiff and Class members could not have reasonably known nor learned through reasonable diligence of the Defect within the warranty period.

72.     Defendants breached the warranty set forth above in that the Recalled Devices were not "free from defects of workmanship and materials." The Defect, which was already present at the time of sale and issuance of the warranty for each product, rendered the product not reasonably fit, suitable, or safe for its intended use.

73.     While the Defect was present at the time of sale and warranty for each product, the Class member purchasing the product could not have discovered the Defect at that time. Had Plaintiff and Class members known of the Defect, they would not have made the purchases.

74.     Prior to learning of the Recall, Plaintiff and Class members used the Recalled Devices in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiff and Class members caused nor contributed to the Defect.

75.     As a result of Defendants' breach of the express warranty, Plaintiff and Class members suffered damages of an amount to be determined at trial.

## COUNT VIII

## **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     Defendants are merchants who regularly engage in the manufacture, marketing, and distribution of goods intended to treat sleep and respiratory disorders. Plaintiff and Class members purchased Defendants' products which were in that category. By operation of law, Defendants impliedly warranted to Plaintiff and Class members that the products were fit for their intended use.

78.     Contrary to the implied warranties, the Recalled Devices were not fit for their intended use due to their defective and dangerous nature. Defendants knew or had reason to know of the Defect prior to issuing the implied warranties.

79.     While the Defect was present at the time the warranties were issued, Plaintiff and Class members could not have discovered the Defect at that time. At the time of purchase, Plaintiff and Class members reasonably expected the products to be fit for their intended use, and they did not receive the goods they bargained for. Had they known of the Defect, they would not have made the purchases.

80.     Prior to learning of the Recall, Plaintiff and Class members used the Recalled Devices in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiff and Class members caused nor contributed to the Defect.

81.     In the instances where Class members did not purchase the Recalled Devices directly from Defendants, they are still the intended beneficiaries of the implied warranties, as the end users whom the retailers purchased the products to sell to, and are therefore entitled to enforce the implied warranties against Defendants.

82.     Pursuant to the Magnuson-Moss Warranty Act, Defendants are prohibited from disclaiming or limiting the implied warranty of merchantability so as to not cover the Defect.

83.     As a result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class members suffered damages of an amount to be determined at trial.

## COUNT IX

## <u>UNJUST ENRICHMENT</u>

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     Defendants were unjustly enriched in their distribution of defective products, at the expense of Plaintiff and Class members. Defendants received a benefit in the form of the profits from the sales of the defective products, conferred on them by Plaintiff and Class members. In the instances where Class members did not purchase the defective products directly from Defendants, they are still the ultimate spenders of the sales to retailers, as the end purchasers whom the retailers sold the products to in turn.

86.     Given the defective and dangerous nature of the Recalled Devices, it would be unjust and inequitable for Defendants to retain the benefits conferred. As the products were unfit for their intended use, Plaintiff and Class members did not receive the goods they bargained for.

87.     Defendants knowingly and willingly accepted and enjoyed the benefits of the sales.

88.     Plaintiff and Class members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

## COUNT X

## **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     The Recalled Devices are consumer products as defined in 15 U.S.C. § 2301(1).

91.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

92.     Defendants are suppliers as defined in 15 U.S.C. § 2301(4). Defendants are also warrantors as defined in 15 U.S.C. § 2301(5) and within the meaning of § 2310(f)

93.     The express warranty on the Recalled Devices is a written warranty as defined in 15 U.S.C. § 2301(6).

94.     The implied warranty of merchantability is an implied warranty as defined in 15 U.S.C. § 2301(7), as modified by § 2308 and § 2304(a).

95.     As outlined above, Defendants breached both the express warranty and the implied warranty of merchantability.

96.     Pursuant to 15 U.S.C. § 2310(e), Defendants admitted notice of their breaches in their issuance of the Q1 2021 Quarterly Report to shareholders and the subsequent Recall, and have failed to cure their breaches despite having a reasonable opportunity to do so in the length of time since then. Plaintiff and Class members are therefore entitled to proceed with this class action.

97.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class members are entitled to recover from Defendants the aggregate expenses reasonably incurred in the commencement and prosecution of this action, in addition to such other relief as is deemed just and proper.

## COUNT XI

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

98.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.     This claim is brought individually under the laws of New Jersey and on behalf of all Class members who reside in states having similar laws regarding consumer fraud.

100.     The marketing and branding of the Recalled Devices are advertisements within the meaning of N.J. Stat. Ann. § 56:8-1(a)

101.     The Recalled Devices are merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c).

102.     Defendants are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

103.     N.J. Stat. Ann. § 56:8-2 provides, in relevant part:

> "The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or
> omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale
> or advertisement of any merchandise or real estate, or with the
> subsequent performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived or damaged thereby, is
> declared to be an unlawful practice…"

104.    As explained above, Defendants knew or had reason to know of the defective and dangerous nature of their products prior to the branding, marketing, and sales of those products. They therefore knowingly and unconscionably concealed, misrepresented, and omitted material facts with the intent that consumers would rely on such concealments, misrepresentations, and omissions in purchasing the defective and dangerous products.

105.    Defendants' concealments, misrepresentations, and omissions were material because Plaintiff and Class members would not have purchased the products had they known of their defective and dangerous nature.

106.    As a result of Defendants' unconscionable deceptions and inducements of Plaintiff and Class members to purchase the defective and dangerous products, Plaintiff's and Class members' health and safety were put at serious risk.

107.    Pursuant to N.J. Stat. Ann. § 56:8-2.11, Defendants are liable for full refunds of all moneys acquired by means of their unlawful branding, marketing, and sales. Plaintiff and the Class members represented in this claim seek all relief dictated by this law, in addition to such other relief as is deemed just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully

request that this Court:

A.      Certify the Class as proposed herein, designating Plaintiff as Class

representative, and appointing the undersigned counsel as Class Counsel;

B.      Declare Defendants financially responsible for notifying the members of

the Class about the pendency of this action;

C.      Award all damages to which Plaintiff and Class members are entitled;

D.      Award pre-judgment and post-judgment interest;

E.      Grant appropriate injunctive and/or declaratory relief;

F.      Award the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 30, 2021                      By his attorneys

                                          **/s/ Adam M. Stewart**_____
                                          Edward F Haber (BBO#215620)
                                          Adam M. Stewart (BBO#661090)
                                          Shapiro Haber & Urmy LLP
                                          Seaport East
                                          Two Seaport Lane
                                          Boston, MA  02210
                                          Telephone: 617-439-3939
                                          ehaber@shulaw.com
                                          astewart@shulaw.com

Howard T. Longman, Esq. (*pro hac vice forthcoming*)
**Longman Law, P.C.**
354 Eisenhower Parkway, Suite 1800
Livingston, New Jersey 07039
Tel: (973) 994 2315
Fax: (973) 994 2319
Hlongman@longman.law

**Attorney for Plaintiff and the Putative Class**